*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 11, 2021

Plaintiff-Appellee,

v

No. 350734
Allegan Circuit Court
LC No. 18-021747-FC

ANDREW WUIS JOHNSON,

Defendant-Appellant.

Before: REDFORD, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by jury of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). The trial court sentenced defendant to 19 to 180 months' imprisonment. We affirm.

## I. BACKGROUND

One evening around Thanksgiving 2017, while the victim's mother was out, after milking the cows, defendant, the victim's stepfather, sat on the couch next to her, slid his hand under her shorts, and then "poked" her vagina. The victim did not disclose the incident to anyone until approximately five months later, right after she returned from a spring break trip with her biological father. Her father dropped her off at defendant's home and that evening she asked her mother to come to her bedroom so that she could speak to her. She told her mother that defendant had touched her inappropriately under her clothes. Her mother took her to stay at her grandparent's that night. The next day, the victim told her father what happened and he took her to the police station where Detective Craig Gardiner learned about the allegation and scheduled a forensic interview for the victim at Safe Harbor with Alicia Deitrich. About two weeks later, the victim attended a medical examination conducted by Dr. Yvonne Mallon.

The prosecution charged defendant with CSC-I and later amended that complaint to add a CSC-II charge. At trial, the victim described for the jury what defendant did the night of the incident. She explained that she did not tell anyone about the incident right away and continued to live in her mother's home because she felt scared and did not know what to do. Defendant testified and denied that the incident occurred because he worked late every evening and rarely

-1-

had an opportunity to be alone with the victim. Deitrich testified regarding the forensic interview, and the Children's Protective Services caseworker who investigated the victim's allegations also testified. Thomas Cottrell and Dr. Mallon testified as expert witnesses on behalf of the prosecution, and Dr. Kathryn Jacobs testified as an expert witness on behalf of the defense. Additionally, defense counsel presented several witnesses who testified about defendant's honest and trustworthy character. At the end of the four-day trial, the jury convicted defendant of CSC-II. The jury found defendant not guilty of CSC-I. Defendant moved for a new trial, claiming that Dr. Mallon had impermissibly vouched for the victim's credibility, but the trial court denied defendant's motion. Defendant now appeals.

## II. STANDARDS OF REVIEW

We review for an abuse of discretion the trial court's admission of evidence. *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014). We also review for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). A trial "court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009) (citation omitted). "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). We review unpreserved evidentiary issues for plain error affecting the defendant's substantial rights. In *People v Carines*, 460 Mich 750, 763-764, 774; 597 NW2d 130 (1999) (quotation marks, alteration, and citations omitted) our Supreme Court clarified the appropriate standard of review:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence.

## III. ANALYSIS

### A. ADMISSION OF DR. MALLON'S EXPERT TESTIMONY

Defendant first argues that Dr. Mallon improperly vouched for the credibility of the victim entitling him to a new trial. We disagree.

Under MRE 702, expert witness testimony is permitted,

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." "[I]t is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835 NW2d 319 (2013) (citation omitted). Jurors, not expert witnesses, make credibility determinations. *Id*. at 348-349; *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

A physician or medical expert may not opine whether a complainant was sexually assaulted when the expert's opinion is based on the expert's assessment of the complainant's truthfulness or when the expert's opinion is based only on what the complainant told the medical expert. *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019). "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id*. Although an expert may not testify that sexual abuse occurred and may not vouch for the veracity of a victim or whether the defendant is guilty,

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995), amended 450 Mich 121 (1995).]

In *Peterson*, our Supreme Court held

> [T]he prosecution may present evidence, if relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse. The prosecution may, in commenting on the evidence adduced at trial, argue the reasonable inferences drawn from the expert's testimony and compare the expert testimony to the facts of the case. Unless a defendant raises the issue of the particular child victim's postincident behavior or attacks the child's credibility, an expert may not testify that the particular child victim's behavior is consistent with that of a sexually abused child. Such testimony would be improper because it comes too close to testifying that the particular child is a victim of sexual abuse. [*Id*. at 373-374.]

In *Thorpe*, our Supreme Court reiterated that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more

than the doctor's opinion that the victim had told the truth." *Thorpe*, 504 Mich at 255 (quotation marks and citation omitted; alteration in original). "Nonetheless, an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings and the complainant's medical history." *Id.* (citation omitted).

Defendant challenges Dr. Mallon's testimony because she testified that she diagnosed the victim with suspected pediatric sexual abuse even though her examination of the victim yielded no physical findings. The prosecution never asked Dr. Mallon regarding the victim's diagnosis or for an opinion whether the victim had been abused. The record, however, reveals that defense counsel elicited Dr. Mallon's testimony regarding the diagnosis. Further, during closing argument, defense counsel, not the prosecution, reemphasized Dr. Mallon's diagnosis.

In *People v Beckley*, 434 Mich 691, 731-732; 456 NW2d 391 (1990), our Supreme Court considered a very similar trial occurrence and explained:

> This is an example of a line of questioning which, on direct examination, would be inappropriate. However, it was defense counsel who opened the door to this line of questioning and who elicited this response from the testifying expert. Defendant's question was direct, and he left open the possibility that the expert would respond negatively and in a manner that could be construed as an expert conclusion with regard to the truthfulness of the victim's allegations. On direct examination, similar testimony crosses the line of acceptability, yet in this case reversal is not required in view of the fact that the response was brought out by defendant. Defendant cannot now complain that the expert's testimony served to vouch for the complainant's credibility when he allowed and in fact drew out the response. To hold otherwise would allow defendant an appellate parachute to escape conviction because of damaging testimony that turns the tide toward the believability of the complainant's allegations.

Therefore, because defendant elicited the testimony in this case about which he now complains, he is not entitled to reversal of his conviction. Further, the trial court did not abuse its discretion by denying defendant's motion for a new trial in which defendant argued this same issue.

Defendant also challenges Dr. Mallon's testimony regarding the normalcy of child sexual abuse victims having normal physical examinations, on the ground that such testimony improperly vouched for the victim. In *People v Del Cid (On Remand)*, 331 Mich App 532, ___; ___ NW2d ___ (2020) (Docket No. 342402); slip op at 9 n 6, this Court explained:

> To be clear, when there are no physical findings, a physician may not testify that the complainant suffered "possible pediatric sexual abuse" or other phrases indicating a conclusion as to the likelihood that such abuse actually occurred. At the same time, however, a medical expert may offer the opinion that a lack of physical findings does not affirmatively establish that no abuse occurred."

In this case, close analysis of Dr. Mallon's testimony does not support defendant's contention that she vouched for the victim. On direct examination Dr. Mallon testified that she

found no physical injury based upon the victim's physical examination. On cross-examination, Dr. Mallon explained that she did not expect physical findings based upon the victim's description of the incident and because of the extended length of time since the incident. Dr. Mallon stated that sometimes she did find physical findings when examining children who alleged that they had been sexually abused. Defense counsel asked her, "And what percentage of the cases you examine do you find no physical findings such as this?" Dr. Mallon responded that probably 75% to 80% of the children that she examined had no physical findings and clarified that even most of her examinations involving digital or penal penetration allegations were normal. Nevertheless, she still performed physical examinations because sometimes she did find injuries that needed to be evaluated and treated. After defense counsel asserted that Dr. Mallon found no physical findings and inquired whether she diagnosed suspected sexual abuse, Dr. Mallon responded affirmatively and agreed with defense counsel's conclusion that she based her diagnosis on the victim's statements. The record establishes that defense counsel elicited Dr. Mallon's testimony about which defendant now takes issue. Therefore, defendant's challenges to Dr. Mallon's testimony fail and he is not entitled to a new trial. We are also not persuaded that *Thorpe* requires a different conclusion because defendant cannot obtain relief on the basis of testimony that defense counsel elicited from the expert witness that the prosecution specifically avoided. *Beckley*, 434 Mich at 731-732.

Defendant argues further that his counsel provided him ineffective assistance by asking Dr. Mallon about the victim's diagnosis. Defendant did not raise this issue before the trial court and failed to move for a new trial or evidentiary hearing on the ground that his counsel provided ineffective assistance. When a defendant fails to move "for a new trial or an evidentiary hearing, this Court's review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). The defendant has the burden of establishing that his counsel denied him effective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must "show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). The defendant must show that defense counsel's actions were not a "result of reasonable professional judgment." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). This Court must not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008) (citation omitted). For the second requirement, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

In this case, close analysis of defense counsel's cross-examination of Dr. Mallon and defense counsel's closing argument indicate that defense counsel strategically defended defendant by attacking Dr. Mallon's credibility and diagnostic conclusions by emphasizing that the victim's examination yielded no physical evidence whatsoever. Defense counsel argued that Dr. Mallon's conclusions were based only on the victim's statements and nothing more. Defense counsel's

emphasis on the lack of physical evidence and inability to confirm that actual sexual abuse occurred served to cast doubt upon the victim's allegations against defendant. Although defendant now questions defense counsel's strategy, we "will not substitute our judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243. Defendant has failed to overcome the strong presumption that defense counsel engaged in strategic action directed to persuade the jury to reasonably doubt defendant's guilt of the charged offenses. *Id*. at 243. Even assuming that defense counsel performed deficiently, we are not persuaded that but for defense counsel's alleged errors, the result of defendant's trial would have been different. *Id*. The jury heard the victim's testimony, defendant's testimony, the testimonies of witnesses regarding how the victim's allegations were not corroborated, and also testimonies from witnesses about defendant's character for truthfulness. The record indicates that the jury decided which witnesses to believe and what facts occurred. The jury convicted defendant of CSC-II despite the prosecution's efforts to convince them to convict defendant of CSC-I. The record does not indicate that a different result would have been reasonably probable.

Defendant argues next that the trial court abused its discretion by permitting Dr. Mallon to testify at trial regarding statements the victim made to her during the physical examination. We disagree.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 provides that hearsay is inadmissible unless permitted under the evidence rules. MRE 803 provides specific exceptions to that general rule. Under MRE 803(4), "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

"The rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016) (quotation marks and citation omitted). "This is true irrespective of whether the declarant sustained any immediately apparent physical injury." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Additionally,

> in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. [*Id*.]

"Further, when the patient is over ten years old, as here, a rebuttable presumption of truthfulness arises." *People v Crump*, 216 Mich App 210, 212; 549 NW2d 36 (1996) (citation omitted).

> Factors related to trustworthiness guarantees surrounding the actual making of the statement include: (1) the age and maturity of the declarant, (2) the manner in which

the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*People v Meeboer (After Remand)*, 439 Mich 310, 324-325; 484 NW2d 621 (1992) (citations omitted).]

In *Meeboer*, our Supreme Court clarified that in cases of suspected or alleged child abuse, a trial court should consider the totality of the circumstances to determine the trustworthiness of a child's statement and whether the child understood the importance of telling the treating physician the truth. *Id*. at 325-326.

Regarding the reasonable necessity of the statements, information regarding the declarant's physical and psychological injuries can be reasonably necessary for medical diagnosis and treatment of the declarant's trauma. *Id*. at 328-329. Medical diagnosis and treatment of a victim involve treatment of her medical, physical, developmental, and psychological well-being. *Id*. at 329. Questions and discussion regarding the identity of the perpetrator may be reasonably necessary as it relates to the diagnosis and treatment of diseases, pregnancy, and the psychological impact of the abuse. *Id*. at 328-329. Disclosing the identity of the perpetrator itself can be a portion of the injury that a victim experiences from a sexual assault. *Id*. at 329.

In this case, the victim's statements were admissible under MRE 803(4) because the record does not support defendant's contention that Dr. Mallon was "an agent or arm of the police," or that the examination was done at the request of the prosecution or law enforcement. The forensic interview was clearly part of law enforcement's investigation into this case. The victim's medical examination, however, did not have the same law enforcement connection. Unlike the forensic interview, the record does not indicate that Detective Gardiner referred the victim to or attended the medical examination. See *Shaw*, 315 Mich at 675. See also *Duenaz*, 306 Mich App at 96. Dr. Mallon explained at trial that she worked for the Helen DeVos Children's Hospital and that Safe Harbor sent her referrals for examinations when it had "concerns of child abuse or suspected child abuse" after performing a forensic interview. Dr. Mallon also explained that she independently conducted her own interview and gathered her own medical history of the children. Further, she testified that she asked open-ended questions to build rapport and gather information from the patient to determine the scope of physical examination and medical testing.

Dr. Mallon's testimony establishes that the victim's statements were for the purpose of medical treatment or diagnosis provided in the child's own terms. Dr. Mallon explained that she started all her examinations by getting the child's medical history to determine the child's concern and what she needed to do during the physical examination. The child's medical history also helped Dr. Mallon determine whether she needed to do any laboratory testing for sexually

transmitted diseases. After obtaining the child's medical history, Dr. Mallon conduct a full physical examination of the patient for injuries and to determine the necessity of further testing. Dr. Mallon explained that she followed this protocol with the victim in this case. Dr. Mallon also testified that medical diagnosis and treatment served the primary purpose of the examination in this case.

The record does not indicate that the victim saw any other physician before seeing Dr. Mallon regarding the alleged sexual abuse. See *Shaw*, 315 Mich at 67. Further, the statements that Dr. Mallon repeated at trial regarding the medical history she obtained from the victim at the time of the examination were simply repetitive of the statements of the incident that the victim testified about at trial. See *Crump*, 216 Mich App at 212. Therefore, the trial court did not abuse its discretion by permitting Dr. Mallon to testify regarding the victim's statements during the examination as permitted under MRE 803(4).

### B. ADMISSION OF COTTRELL'S EXPERT TESTIMONY

Defendant argues next that Cottrell's testimony regarding delayed reporting improperly bolstered the credibility of the victim. We disagree.

In *Peterson*, 450 Mich at 352-353, our Supreme Court clarified that an expert witness may testify about the following:

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility.

In this case, Cottrell provided testimony that was "relevant and helpful, to generally explain the common postincident behavior of children who are victims of sexual abuse." *Id*. at 373. Cottrell testified generally about child victim disclosure of sexual abuse, how they decide to disclose, how they may act in the meantime, to whom they disclose, and how they may describe the sexual abuse in different situations. See *id*. at 379. Such testimony assisted the jury in this case because the victim disclosed the abuse approximately five months after it occurred and, in the meantime, she continued to live with defendant and her mother.

Cottrell did not testify regarding the victim's behavior in this case and whether the victim's behavior was "consistent with that of a sexually abused child." *Id*. 450 at 374. Cottrell admitted that he had no specific knowledge of the facts surrounding this case, and he simply provided a general overview of what child sexual abuse victims may or may not do. He did not know what testimony he provided applied to the victim. He only provided general background information on child sexual abuse and delayed disclosure so that the jury could evaluate the testimonies of the other witnesses including the victim. See *id*. at 380. Cottrell did not impermissibly bolster the credibility of the victim. Therefore, the trial court did not abuse its discretion by permitting Cottrell to testify in this case.

## C. LIMITATION OF DR. JACOBS' EXPERT TESTIMONY

Defendant also argues that the trial court abused its discretion by refusing to permit Dr. Jacobs to testify regarding the forensic interview protocol used in the victim's forensic interview. We disagree.

Defendant sought to introduce Dr. Jacobs' opinion testimony regarding the forensic interview of the victim conducted in this case. The trial court declined to permit such testimony because, among other things, Dr. Jacobs' testimony would involve inadmissible hearsay including statements of the victim and the interviewer during the forensic interview. Defendant intended for Dr. Jacobs to testify how the forensic interview was not properly conducted and explain why. The trial court concluded that to do so she would have to discuss the specific questions asked and answered during the interview. The trial court ruled that an expert witness could testify regarding forensic interview protocols but not regarding the actual forensic interview performed in this case. The trial court expressed concern that testimony regarding whether the actual forensic interview had been performed properly would improperly involve testimony regarding the credibility of the victim which was solely for the jury to decide. Therefore, the trial court limited Dr. Jacobs' testimony precluding her from testifying regarding the victim's specific forensic interview. The trial court qualified Dr. Jacobs as a clinical psychologist, but she was not qualified as an expert in forensic interviewing because she had never participated in the training and had never performed any forensic interviewing "pursuant to the training." She could, however, testify regarding "other areas of expertise."

The record reflects that Dr. Jacobs testified generally about forensic interview protocols and the importance of obtaining accurate and complete information from children. Dr. Jacobs testified that children needed "to learn how to keep track of what they know from where. Whether it was something they guessed or dreamt about or saw on a TV show or on the news" and the forensic interview protocol was "developed to try and get the best information from kids without screwing up by adding or changing or misperceiving or influencing, even unintentionally, what comes out of the child's mouth." Dr. Jacobs testified that children enhanced their stories and interviewers could elicit false or inaccurate information by asking the wrong questions. Dr. Jacobs explained that she did not testify as a clinician but focused her testimony on her "experience in reading journals and attending conferences and completing [her] dissertation and consulting with other professions. And reading the research on forensic interviewing and testifying about it and presenting it."

The record indicates that the trial court gave Dr. Jacobs significant latitude. The trial court merely limited her from improperly introducing hearsay and rendering an opinion regarding the veracity of the victim's statements during the forensic interview. Defendant points to no authority that supports his argument that the excluded testimony should have been admitted and he has failed to reference any hearsay exception that would permit its introduction. We find no merit to defendant's argument that the trial court erred in this regard.

## D. DENIAL OF DEFENDANT'S MOTION FOR NEW TRIAL

Defendant reiterates his arguments respecting the trial court's errors in permitting Dr. Mallon to testify in relation to his claim that the trial court erred by not granting him a new trial.

For the reasons set forth previously in this opinion, the trial court did not abuse its discretion by permitting Dr. Mallon to testify as an expert in this case regarding matters within her expertise and her conduction of the physical examination of the victim in this case. The grounds that defendant asserts entitling him to a new trial lack merit. Accordingly, defendant could not establish entitlement to a new trial and the trial court did not abuse its discretion by denying his motion.

Affirmed.

/s/ James Robert Redford
/s/ David H. Sawyer
/s/ Mark T. Boonstra